JULIE A. GOLDBERG, ESQ.
California Bar No. 235565
GOLDBERG & ASSOCIATES, P.C.
5586 Broadway, Third Floor
Bronx, New York 10463
Tel.: (718) 432-1022
Email: ecf@goldbergimmigration.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN  DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAIN MOHAMMED QASEM QASEM;<br>NASR AL-DAIN SALEH ALI QASEM;<br>MUSTAFA MOHAMED QASEM QASEM;<br>GOLDBERG & ASSOCIATES, P.C.;<br><br>       Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT ("ICE"); MATTHEW<br>ALBENCE, Acting Director for ICE;<br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY ("DHS"); CHAD WOLF,<br>Secretary of DHS; U.S. CUSTOMS AND<br>BORDER PROTECTION ("CBP"); MARK A.<br>MORGAN, Acting Commissioner of CBP;<br>JOHN DOE, CBP Officer; EXECUTIVE<br>OFFICE OF IMMIGRATION REVIEW;<br>JAMES MCHENRY, Director of the<br>Executive Office for Immigration Review; U.S.<br>MARSHALS SERVICE ("USMS"); DONALD<br>W. WASHINGTON, Director for USMS;<br><br>       Defendants. | Case No.  '20CV0748 BEN LL<br><br>WRIT OF HABEAS CORPUS AND<br>COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF; |

1

COMPLAINT

COME NOW Plaintiffs Rain Mohammed Qasem Qasem, Nasr Al-Dain Saleh Ali Qasem, Mustafa Mohamed Qasem Qasem and Goldberg & Associates, P.C., by and through their attorneys, and bring the above-styled Complaint for Declaratory and Injunctive Relief against Defendants as follows:

<u>INTRODUCTION</u>

1.   Plaintiffs Rain Mohammed Qasem Qasem, hereinafter "Rain," Nasr Al-Dain Saleh Ali Qasem, herein "Nasr," and Mustafa Mohamed Qasem Qasem, hereinafter "Mustafa," collectively referred to herein as "Detainee Plaintiffs," are Yemen nationals who came to the United States on February 22, 2020 seeking asylum.

2.   Yemen is plagued with a gruesome civil war. Detainee Plaintiffs were approached in Yemen by guerilla and told they were required to support the war or face persecution. Detainee Plaintiffs refused to join or support any party to the war and have since been persecuted and face endangerment of their lives. Asylum applicants may manifest a political opinion by their refusal to join or support an organization or departing from the same. *See, e.g.*, *Borja v. INS*, 175 F.3d 732 (9th Cir. 1999) (en banc) (opposition to NPA), superseded by statute on other grounds as stated by *Parussimova v. Mukasey*, 555 F.3d 734, 739–40 (9th Cir. 2009); *Del Carmen Molina v. INS*, 170 F.3d 1247, 1249 (9th Cir. 1999) (death threats and forced recruitment, where applicant did not agree with Salvadoran guerillas); *Gonzales-Neyra v. INS*, 122 F.3d 1293 (9th Cir. 1997) (refusal to make payments to Shining Path guerilla movement), *amended by* 133 F.3d 726 (9th Cir. 1998) (order); *Rodriguez-Matamoros v. INS*, 86 F.3d 158, 160 (9th Cir. 1996) (refusal to support Sandinistas); *Gonzalez v. INS*, 82 F.3d 903, 906 (9th Cir. 1996) (same).

3.   When Detainee Plaintiffs crossed the southern border at the San Diego Port of Entry, they were apprehended by a U.S. Customs and Border Protection ("CBP") officer for unlawful entry.

2

COMPLAINT

Detainee Plaintiffs expressed to the officer their need for protection and intention to seek asylum. The law requires that CBP refer the asylum-seekers to USCIS to conduct an interview to assess whether they possess a credible fear of persecution. *See* U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b)(4). Immediately after Detainee Plaintiffs were detained and taken into the custody of CBP. Subsequently attorneys Goldberg & Associates, P.C. were retained to represent all three (3) Detainee Plaintiffs in removal/asylum proceedings.

4.   Between the dates of February 27, 2020, and April 17, 2020, Plaintiffs' attorneys have attempted to obtain the locations of their clients, (Rain, Nasr, and Mustafa), in order to provide adequate legal representation to them. Plaintiffs' attorneys searched for Detainee Plaintiffs via the ICE detainee locator, contacting the Otay Detention Center, ICE Field Office in San Diego, CA, ICE-ERO Detention Reporting and Information Line, the U.S. Attorney's Office, and even physically visited the Ota Mesa Detention Center. Plaintiffs' attorneys were repeatedly met with more shoulder shrugs than answers when asked about Detainee Plaintiffs' locations.

5.   On March 5, 2020, Plaintiffs' attorneys went in person at the Otay Mesa Detention Center, and a CBP officer confirmed an encounter with Rain on February 22, 2020, but stated that neither Rain, Nasr, or Mustafa were in CBP's custody.

6.   Subsequently, Plaintiffs' attorneys contacted the ICE-ERO Detention Reporting and Information Line at (888) 351-4024 and were told by an Agent that neither Rain, Nasr, or Mustafa were in the custody of CBP or in the custody of ICE.

7.   Plaintiffs' attorneys contacted counsel for CBP and were told she could not confirm the locations of Detainee Plaintiffs. Plaintiffs attorneys then contacted the U.S. Attorney's Office for the Southern District of California and were again told CBP had no records

of Detainee Plaintiffs being apprehend – contrary to what a CBP Officer represented to Plaintiffs' Attorneys previously.

8.      As of April 19, 2020, Plaintiffs' attorneys still do not know the locations of their clients and they remain in government custody. Detainee Plaintiffs have been apprehended and for two (2) months been hidden in a black hole and Defendants continue to pretend they do not exist.

9.      Detainee Plaintiffs are asylum seekers and are being denied their right to counsel. Defendants are intentionally barring immigration attorneys from meeting with their clients. Failure to provide information to their legal representatives interferes significantly with detained immigrants' right to counsel and with their attorneys' First Amendment right to represent their clients. This separation is being done for no legitimate reason and threatens imminent and irreparable harm. The Government has made it impossible for legal representatives to communicate with their clients.

10.      As set forth below, Defendants' failure to provide detained immigrants right to counsel and attorneys access to their clients violates the Immigration and Nationality Act ("INA"), the Administrative Procedures Act ("APA"), the First Amendment, and the Due Process Clause of the Fifth Amendment.

## JURISDICTION

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question); 28 U.S.C. §§ 2201 and 2202 (declaratory relief); and 28 U.S.C. § 2241 (habeas corpus).

12. An actual and justiciable controversy exists between the parties under 28 U.S.C. § 2201, and this Court has authority to grant declaratory and injunctive relief, *id*. §§ 1351, 2201, 2202.

VENUE

13. Venue is proper in the Southern District of California under 28 U.S.C. § 1391(e)(1), as (i) this is an action in which Defendants are officers and employees of the United States and agencies thereof acting in their official capacity under color of legal authority, or one or more agencies of the United States; and (ii) a substantial part of the events or omission giving rise to the claims occurred in this judicial district, including the separation of Plaintiffs from their attorneys.

PARTIES

14. Plaintiff Rain Mohammed Qasem Qasem, "Rain," is a Yemen national detained by Defendants. He is an asylum seeker. Rain is currently unable to access his retained attorneys because Defendants have refused to provide his lawyers any information related to his detention and his location. Defendants have restricted attorney access to him and his ability to be represented in complicated immigration proceedings is being significantly hindered by Defendants' actions and inactions.

15. Plaintiff Nasr-Aldain Saleh Ali Qasem, "Nasr" is a Yemen national detained at the San Diego Port of Entry in San Diego, California. He is an asylum seeker. Nasr is currently unable to access his retained attorneys because Defendants have refused to provide his lawyers any information related to his detention and his location. Defendants have restricted attorney access to him and his ability to be represented in complicated immigration proceedings is being significantly hindered by Defendants' actions and inactions.

16. Plaintiff Mustafa Mohamed Qasem Qasem is a Yemen national detained at the San Diego Port of Entry in San Diego, California. He is an asylum seeker. Mustafa is currently unable to access his retained attorneys because Defendants have refused to provide his lawyers any

information related to his detention and his location. Defendants have restricted attorney access to him and his ability to be represented in complicated immigration proceedings is being significantly hindered by Defendants' actions and inactions.

17. Plaintiff Goldberg & Associates, P.C. is a law firm, incorporated in California, composed of immigration attorneys and immigrant rights advocates. They seek relief from this Court because Defendants' actions are placing the statutory, regulatory and Constitutional rights of Plaintiffs at risk and depriving Plaintiffs of their right to a meaningful opportunity to present their case and to have access to counsel.

18. Defendant U.S. Immigration and Customs Enforcement ("ICE") is a component of the Department of Homeland Security ("DHS"), an executive department of the United States. Defendant ICE carries out removal orders and oversees immigration detention.

19. Defendant Matthew Albence is the Acting Director of ICE, and is sued in his official capacity only.

20. Defendant U.S. Department of Homeland Security (DHS) has responsibility for enforcing the immigration laws of the United States.

21. Defendant Chad Wolf is the Secretary of DHS. In this capacity, he directs each of the component agencies within DHS: ICE, USCIS, and CBP. As a result, Defendant Wolf has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, is empowered to grant asylum or other relief, and is a legal custodian of the Plaintiffs. Wolf is sued in his official capacity only.

22. Defendant U.S. Customs and Border Protection ("CBP") is the sub-agency of DHS that is responsible for the initial processing and detention of noncitizens who are apprehended near the U.S. border, including referring them for a credible fear interview by an asylum officer.

6

COMPLAINT

23. Defendant Mark A. Morgan is the Commissioner of CBP and is sued in his official capacity only.

24. Defendant John Doe is the CBP officer who apprehended Detainee Plaintiffs at the San Diego Port of Entry on February 22, 2020.

25. Defendant Executive Office for Immigration Review ("EOIR") is a federal government agency within the Department of Justice ("DOJ"), an executive department of the United States.

26. Defendant Executive Office for Immigration Review ("EOIR") is a federal government agency within the DOJ that includes the immigration courts and the Board of Immigration Appeals ("BIA"). It is responsible for directing and managing the immigration court system.

27. Defendant James McHenry is the Director of EOIR and is sued in his official capacity only.

28. Defendant U.S. Marshal Service ("USMS") is a federal government agency within the Department of Justice DOJ. It is responsible for apprehending wanted fugitives, providing protection for the federal judiciary, transporting federal prisoners, protecting endangered federal witnesses, and managing assets seized from criminal enterprises

29. Defendant Donald W. Washington is the Director of USMS and is sued in his official capacity herein.

<u>STATEMENT OF FACTS</u>

30. Rain was born in Lahj, Yemen on September 9, 1996. *See* Exhibit A.

31. Nasr was born in Lahj, Yemen on January 1, 1990. *See* Exhibit C.

32. Mustafa was bron in Lahj, Yemen on July 8, 2000. *See* Exhibit E.

33. Yemen is currently undergoing a civil war. *See* Exhibit R.

7

COMPLAINT

34. On or about February 1, 2020, Rain's, Nasr's, and Mustafa's lives were threaten by guerilla members in Lahj, Yemen for failing to agree to support the war. *See* Exhibit Julie G.

35. On or about February 22, 2020, Rain, Nasr, and Mustafa traveled to Mexico with the intention of entering the U.S. to seek asylum. *See* Exhibit G.

36. On or about February 22, 2020, Rain, Nasr, Mustafa, and another individual, hereinafter referred to as "Doe," attempted to enter the U.S. through the San Diego Port of Entry. *See* Exhibit Julie G.

37. On or about February 22, 2020, Rain, Nasr, Mustafa and Doe were apprehended by a CBP Officer. *See* Exhibit G.

38. On or about February 22, 2020, Rain, Nasr, Mustafa and Doe were taken under custody, and taken to a local detention facility. *See* Exhibit G.

39. While at the detention facility, neither Rain, Nasr, Mustafa, or Doe were given access to a telephone. *See* Exhibit G.

40. On or about February 22, 2020, Doe was told by a CBP Officer Doe was to return to Mexico. *See* Exhibit G.

41. On or about February 22, 2020, Rain, Nasr, and Mustafa provided Doe with their cousin's, Fatehi Muflahi's (hereinafter "Fatehi"), telephone number and directed Doe to contact Fatehi and to tell him to hire an attorney immediately for Rain, Nasr, and Mustafa. *See* Exhibit G.

42. On or about February 22, 2020, Doe contacted Fatehi and explained to Fatehi that his cousins Rain, Nasr, and Mustafa had been taken under CBP custody. *See* Exhibit G.

43. On or about February 22, 2020, Doe and Fatehi contacted the law offices of Goldberg & Associates, P.C. by a conferenced telephone call. *See* Exhibit G.

44. On or about February 22, 2020, Doe and Fatehi explained to attorney Julie Goldberg the facts mentioned in paragraphs 33 through 42. *See* Exhibit G.

45. On or about February 22, 2020, after speaking with Doe and Fatehi, attorney Julie Goldberg agreed to take on representation of Rain, Nasr, and Mustafa and asked Fatehi to come to her office to sign a retainer agreement. *See* Exhibit G.

46. On or about February 22, 2020, attorney Julie Goldberg accessed the Online Detainee Locator System and searched for Rain, Nar, and Mustafa using their respective names and dates of birth. *See* Exhibit G. However, the search did not prompt any results. *See* Exhibit G.

47. On or about February 23, 2020, attorney Julie Goldberg contacted the Otay Mesa Detention Center and was told that without an alien number no information related to detainees would be disseminated. Because attorney Julie Goldberg did not have alien numbers for either Rain, Nasr, or Mustafa and no reasonable means of obtaining them she was unable to have any information provided to her. *See* Exhibit G.

48. On or about February 24, 2020, attorney Julie Goldberg again accessed the Online Detainee Locator System and searched for her clients with no avail. *See* Exhibit G.

49. On or about February 24, 2020, attorney Julie Goldberg again contacted the Otay Mesa Detention Center seeking information about her clients and again was told no information related to her clients would be disseminated. *See* Exhibit G.

50. On or about February 25, 2020, attorney Julie Goldberg again accessed the Online Detainee Locator System and searched for her clients with no avail. *See* Exhibit G.

51. On or about February 25, 2020, attorney Julie Goldberg again contacted the Otay Mesa Detention Center seeking information about her clients and again was told no information related to her clients would be disseminated. *See* Exhibit G.

52. On February 26, 2020, Fatehi visited attorney Julie Goldberg's office and executed a retainer agreement and a G-28. *See* Exhibit B.

53. On February 27, 2020, Julie Goldberg's paralegal Ana Munoz, (hereinafter "Munoz"), accessed the Online Detainee Locator System using each Plaintiffs' names, last names, dates or birth and country of citizenship. Ana Munoz was unsuccessful in her search. *See* Exhibit H.

54. On February 27, 2020, Munoz called the Otay Mesa Detention Center in San Diego and the officer she spoke with stated he was unable to release information to Munoz. *See* Exhibit H.

55. On March 2, 2020, Munoz called the Otay Mesa Detention Center, as well as the ICE Field Office in San Diego at telephone numbers (619) 671-8724 and (619) 671-8700.

56. On March 2, 2020, an Officer told Munoz that Munoz needed an alien number. Munoz explained to the Officer Munoz did not have the alien number but did have all the clients' names, dates of birth, and country of citizenship. *See* Exhibit H.

57. On March 2, 2020, Munoz was transferred to the front-desk phone, and was asked for the spelling of the client's name. *See* Exhbit H.

58. Munoz provided him with, Rian Mohammed Qasem Qasem's name and informed Munoz no detainee was in custody under that name. *See* Exhbit H.

59. On March 3, 2020, Munoz again called the ICE-ERO Detention Reporting and Information Line at (888) 351-4024. *See* Exhbit H.

60. Munoz spoke to Customer Service Agent Sonia, Agent No. 8856, who conducted a search for Rain, Nasr, and Mustafa. *See* Exhbit H.

61. Agent Sonia unable to find locate an encounter for either Plaintiffs and stated that neither had been processed at any Detention Center after searching both the ICE and CBP systems. *See* Exhibit H.

62. Agent Sonia advised Munoz to reach out to the ICE Field Office in San Diego by telephone at the number (619) 436-0410 to verify the date of the encounter. *See* Exhibit H.

63. On March 3, 2020, Munoz contacted the ICE Field Office in San Diego and was transferred to the Removal Operations Department. There Munoz spoke to Receptionist Glenda. *See* Exhibit H.

64. Munoz provided to Receptionist Glenda with the names, dates of birth, and country of citizenship for Plaintiffs. Glenda informed Munoz she was unable to locate Plaintiffs.

65. On March 5, 2020, Munoz traveled from Los Angeles, CA to the Otay Mesa Detention Center located at 7488 Calzada De La Fuente San Diego, CA 92154. *See* Exhibit I.

66. Munoz went before Officer Ray, the front desk officer, provided a G-28 for Goldberg & Associates, P.C. and explained Munoz was there on behalf of Julie Goldberg and was trying to locate her clients. *See* Exhibit H.

67. Officer Ray told Munoz the Plaintiffs were not being held in ICE custody. *See* Exhibit H.

68. Officer Ray, then asked Officer Chia to assist Munoz in locating the Plaintiffs. *See* Exhibit H.

69. Munoz asked Officer Chia to search their names by using their last names as their first names. Officer Chia did so, and an encounter record populated at San Diego Border for Rain on February 22, 2020. *See* Exhibit H.

70. Officer Chia indicated she did not know whether Rain was in ICE custody. *See* Exhibit H.

71. Officer Chia was unable to locate records for Mustafa and Nasr in the ICE and CBP systems. *See* Exhibit H.

72. Officer Ray asked Munoz to fill out a Clearance Consent form in the event ICE takes custody of Rain in order to allow Goldberg & Associates, P.C. to enter the facility. *See* Exhibit H.

73. On March 6, 2020. Munoz called CBP San Diego Port of Entry at (619) 685-4300. *See* Exhibit H.

74. Munoz was transferred to Officer Martinez. Munoz provided Officer Martinez with Rain's biographical information. *See* Exhibit H.

75. Officer Martinez confirmed an encounter occurred on February 22, 2020 at the San Diego port of entry for Rain but stated was unable to provide Munoz with any information related to Rain's custody, advising "it could take days" for Rain's information to appear in the ICE locator. *See* Exhibit H.

76. On March 9, 2020, not having heard back from Officer Martinez, Munoz again called San Diego CBP and spoke to Officer Paul at phone number (619) 744-5240. *See* Exhibit H.

77. Officer Paul confirmed again, Rian's encounter with CBP in San Diego, and asked Munoz to fax a written letter along with G-28 inquiring as to the location of Rain to fax number (619) 645-6644. *See* Exhibit H.

78. On March 9, 2020, Munoz faxed a letter noticing Goldberg & Associates representation along with an executed G-28 evidencing our representation. *See* Exhibit K.

79. On March 30, 2020, attorney Julie Goldberg's associate Robert Ruano, (hereinafter "Ruano"), called the San Diego CBP Office at (619) 744-5240 and explained to the receptionist Goldberg & Associates had faxed a letter of representation and a G-28 on March 9, 2020, and had not heard back from their office. *See* Exhibit J.

12

COMPLAINT

80. The receptionist explained to Ruano that all the attorneys were out of the office due to COVID-19 and transferred Ruano to the Attorney's Office Secretary, Andrea Rodriguez's voice message inbox. Ruano left a voice message. *See* Exhibit J.

81. On April 2, 2020, Ruano again called the San Diego CBP Office at (619) 744-5240 and was again transferred to Andrea Rodriguez's voice message inbox. Ruano left a voice message again. *See* Exhibit J.

82. On April 6, Ruano again called the San Diego CBP Office at (619) 744-5240 and this time was transferred to Amy Dell, Esq. (counsel for CBP). *See* Exhibit J.

83.  Dell explained she did not have access to the system to search for Detainee Plaintiffs and was unable to inform Ruano as to their locations. *See* Exhibit J.

84. Ruano explained that a searched had been conducted at the San Diego Port of Entry and Goldberg & Associates were told there was an encounter on February 22, 2020, but has still been unable to locate his clients. *See* Exhibit J.

85.  Dell asked Ruano for his email address and said she would email me the contact information ICE counsel as Detainee Plaintiffs are "likely to be in ICE custody if the encounter was on February 22, 2020." *See* Exhibit J.

86. On April 6, 2020, Dell emailed Ruano and provided a website link, (https://www.ice.gov/webform/ero-contact-form#wcm-survey-target-id), and recommended conducting a search for Detainee Plaintiffs through the link. *See* Exhibit L.

87. On April 6, 2020, Pursuant to Dell's recommendation, Ruano submitted an ERO Contact Form for all three clients via https://www.ice.gov/webform/ero-contact-form. *See* Exhibit L.

88. On April 6, 2020, Ruano emailed Dell indicating that government and its agencies are refusing to provide Goldberg's firm access to its clients and any information related to their encounter.

89. In his email, Ruano asked for Dell's assistance in providing the firm with information related to the February 22, 2020 encounter at the San Diego Port of Entry and current location as to: Rain Mohammed Qasem Qasem, DOB - 09/09/1996; Mustafa Mohammed Qasem Qasem, DOB - 07/08/2000; and Nasr-Aldain Saleh Ali Qasem, DOB - 01/01/1990; indicating that it Ruano does not receive a response from the government by Friday, April 10, 2020, Goldberg & Associates would be filing a Complaint and seeking emergency relief for access to our clients on Monday, April 13, 2020. *See* Exhibit L.

90. On April 6, 2020. Dell responded to Ruano recommending Ruano to search for the Detainee Plaintiffs through https://www.dhs.gov/freedom-information-act-foia. *See* Exhibit L.

91. On April 7, 2020, Goldberg & Associates received a response to its submission made on https://www.ice.gov/webform/ero-contact-form, stating, "After reviewing your inquiry, we feel that it is best for you to contact the U.S. Customs and Border Protection Agency." *See* Exhibit L.

92. On April 7, 2020, Ruano called the U.S. Attorney's Office for the Southern District of California at (619) 557-5610.  *See* Exhibit J.

93. Ruano was told all attorneys are working remotely and could not be contacted remotely because they are experiencing connectivity issues. *See* Exhibit J.

94. Ruano demanded to speak to someone. *See* Exhibit J.

95. Ruano was transferred to Larry Cheney's voice message inbox in the Civil Division and left a voice message introducing himself and explaining Goldberg's firm intends on filing a Civil Complaint and Ex-Parte Motion for Preliminary Injunction. *See* Exhibit J.

96. Ruano called again and was then transferred to Kristalyn Smith in the Civil Division. Ruano again left a similar voice message. *See* Exhibit J.

97. On April 7, 2020, Ruano called the U.S. Attorney's Office for the Southern District of California at (619) 557-5610 and was transferred to U.S. Attorney Katherine Lind Parker. *See* Exhibit J.

98. Parker asked Ruano that he email her Goldberg & Associates' ex parte notice and to provide any information the firm has related to Goldberg's clients. *See* Exhibit J.

99. On April 7, 2020, Ruano emailed Parker notice his firm will being file a civil complaint and moving ex-parte for an order seeking injunctive relief ordering the to provide the current locations of their clients indicating the firm is also agreeable to discuss other alternatives which would be in the interest of judicial efficiency. *See* Exhibit J.

100. On April 7, 2020. Parker responded to Ruano's email indicating she did not know of the Detainee Plaintiffs locations but she would attempt to discover their locations.

101. On April 17, 2020, not having heard back from Parker or any other government agency, Ruano emailed Parker *ex-parte* notice again indicating Goldberg & Associated was filing a civil complaint and a motion for injunctive relief. *See* Exhibit N.

102. On April 17, 2020, Parker responded confirming there are no CBP records related to Detainee Plaintiffs. *See* Exhibit O. Despite being told otherwise *See* Paragraph 69, Lines 19 – 22.

103. On April 17, 2020, later that day, Parker emailed Ruano stating Detainee Plaintiffs' names have been "configured differently" and that they have been "located." *See* Exhibit P.

15

COMPLAINT

104.     Parker's email continued to state that Detainee Plaintiffs "were held as material witnesses and were released from USMS custody yesterday and are being transported to Imperial Beach station."

105.     Ruano responded to Parker's email requesting his clients be provided with attorney Julie Goldberg's direct cell phone number and requested an in-person meeting Monday morning with his clients. *See* Exhibit Q.

106.     On April 19, 2020, Parker responded to Ruano's request for an in-person meeting with his client by stating, "I do not know whether the in-person meeting is possible." *See* Exhibit Q.

107.      As of April 19, 2020, Attorney Plaintiffs have not been contacted by their clients, or been given access to their clients.

<u>BACKGROUND</u>

108.     In April 2018, Attorney General Sessions announced a "zero-tolerance policy" requiring all U.S. Attorney's Offices along the U.S.-Mexico border to prioritize the prosecution of offenses under 8 U.S.C. § 1325(a) (improper entry). *See* Dep't of Justice, Office of Public Affairs, "Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry," Press Release No. 18-417 (Apr. 6, 2018), *available at* https://www.justice.gov/opa/pr/attorney-general-announces-zero-tolerance-policy-criminalillegal-entry (last visited June 22, 2018); U.S. Customs and Border Protection, "Zero Tolerance Immigration Prosecutions – Family Fact Sheet" (June 15, 2018), *available at* https://www.cbp.gov/newsroom/zero-tolerance-immigration-prosecutions-family-fact-sheet ("The Attorney General directed United States Attorneys on the Southwest Border to prosecute all amenable adults who illegally enter the country, for 8 U.S.C. § 1325(a), illegal entry.").

109.     Thus, Detainee Plaintiffs face a charge and prosecution with the crime of improper entry under 8 U.S.C. § 1325 without being allowed to speak with their attorneys.

110.     Instead, the Government has held and continues to hold Detainee Plaintiffs at unknown facilities keeping them imprisoned while waiting to begin processing them for civil immigration proceedings. Detainees' attorneys have not been permitted to see or speak with their clients.

111.     The Government has continued to separate Detainee Plaintiffs for nearly two (2) months – all while failing to provide Detainee Plaintiffs their credible fear interviews in order to continue pursuing their asylum claim, and failing to provide them information on when they will appear in front of an immigration judge.

112.     The harm caused by this intentional separation is compounded by the Government's delay in processing Detainee Plaintiffs' claims for asylum.

113.     Upon first interacting with federal immigration officials – CBP Officers/Border Patrol Agents – Detainee Plaintiffs expressed their need for protection and intention to seek asylum.

114.     The law requires that Defendant CBP then refer the asylum-seekers to Defendant USCIS to conduct an interview to assess whether they possess a credible fear of persecution. *See* U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b)(4).

115.     If an asylum officer makes a positive determination, the asylum-seeker is referred to an immigration judge for a hearing on the petition for asylum. *See* 8 C.F.R. § 208.30(f). If still detained, the asylum-seeker is also then entitled to petition for their release at an individual custody hearing before an immigration judge. 8 C.F.R. § 208.30(f).

116.     If the asylum officer does not find the expressed fear of persecution to be credible, the noncitizen may seek review of the adverse credible fear determination before an immigration judge.  *See* C.F.R. § 208.30(g).

117.     Thus, Detainee Plaintiffs must first receive their credible fear interview before they are entitled to present their asylum claims, along with any petition for individual custody hearings, to an immigration judge. Yet Defendants have unreasonably delayed providing this requisite first step and expanded the harm by failing to allow Detainee Plaintiffs to see or speak to their attorneys.

118.     Defendants failure to provide information to Detainee Plaintiffs' attorneys severely curtails detained immigrants' access to counsel.

119.     Although noncitizens have a statutory and regulatory right to retain counsel in immigration proceedings, noncitizens in immigration detention face serious barriers to representation. Many detained immigrants lack financial resources and their ability to locate an attorney is severely diminished in detention.[1] Only thirty-six percent of noncitizens in detention who sought a lawyer were able to find one and only fourteen percent of detainees ultimately secured counsel.[2]

///

///

---

[1] Ingrid V. Eagly & Steven Shafer, *A National Study of Access to Counsel in Immigration Court*, 164 U. PA. L. REV. 1, 34 (2015).

[2] *Id*. at 32, 34-35.

18

COMPLAINT

120.     Defendants' decision to continue to fail to provide any information whatsoever for detained noncitizens to their attorneys further diminishes immigrants' ability to access counsel.

121.     Defendants have made it impossible for Attorney Plaintiffs to access their detained clients and impossible for detained immigrants to fully realize their right to counsel.

122.     Defendant Agencies have adopted practices that seriously diminish attorneys' ability to represent their clients.

123.     Under these circumstances, detained immigrants and attorneys cannot possibly have the necessary amount of contact or time to adequately prepare for their hearings. Similar restrictions exist across ICE detention facilities nationwide.

124.     Defendants' failure to issue and implement uniform, reasonable policies are significantly interfering with access to counsel and curtailing the due process rights of those who are detained.

125.     The Government has no legitimate interest in separating Detainee Plaintiffs from their attorneys.

CLAIMS FOR RELIEF

COUNT I

VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT<br>(Against All Defendants)

126.     All the foregoing allegations are re-alleged and incorporated by reference.

127.     The Administrative Procedure Act creates a right of judicial review of "final agency action for which there is no other adequate remedy in court," 5 U.S.C. § 704, and of agency action "unlawfully withheld or unreasonably denied," 5 U.S.C. § 701(1).

19

COMPLAINT

128.     Defendants are subject to the provisions of the APA.

129.     Agency action includes the failure to act. *Id*. § 551(13).

130.     Defendants have failed to issue information to Plaintiffs' attorneys in order for Plaintiffs to provide guidance to Plaintiffs in immigration court proceedings and Defendants have failed to provide information as to Plaintiffs' location thereby preventing attorney-client visits and thereby failing to preserve Plaintiffs' statutory, regulatory, and constitutional rights.

131.     Defendants have failed to provide Detainee Plaintiffs with their credible fear interviews.

132.     Defendants are also entitled to a bond hearing upon motion which has already been delayed by two months by agency failure to locate.

133.     Defendants' failure to act in order to protect the statutory, regulatory, and constitutional rights of Plaintiffs constitutes agency action that is "arbitrary, capricious, abuse of discretion, or otherwise not in accordance with law" under 5 U.S.C. § 706(2)(A).

134.     Defendants' failure to act constitutes agency action "unlawfully withheld or unreasonably denied." 5 U.S.C. § 701(1).

## COUNT II

### VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT AND THE ADMINISTRATIVE PROCEDURE ACT (ACCESS TO COUNSEL)
(Against All Defendants)

135.     All the foregoing allegations are re-alleged and incorporated by reference.

136.     The Immigration and Nationality Act, 8 U.S.C. § 1362, provides that "[i]n any removal proceedings before an immigration judge," the individual "shall have the privilege of being represented . . . ." *See also* 8 C.F.R. § 1240.3. The INA further provides that "[removal] proceedings may take place (i) in person . . . (iii) through video conference, or (iv) … through

telephone conference [with the noncitizen's consent and upon advisement of the right to proceed in person or through video conference in certain cases]."

137.     The APA, 5 U.S.C. § 555(b), provides that "[a] person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel or, if permitted by the agency, by another qualified representative. A party is entitled to appear in person or by/with counsel or other duly qualified representative in an agency proceeding." Individuals subjected to removal procedures are compelled to appear in person before agency representatives.

138.     Similarly as in this case, in *Doe v. Wolf*, S.D. Cal., Jan. 14, 2020, No. 19-CV-2119-DMS (AGS) 2020 WL 209100, asylum seekers who entered from Mexico and who expressed a fear of persecution if returned to Mexico brought putative class action challenging government's refusal, in alleged violation of the Administrative Procedure Act (APA), to allow asylum seekers access to their retained counsel prior to and during their non-refoulement interviews. After a class was certified, asylum seekers moved for class wide preliminary injunction. *Id.*

139.     This Court entered  an Order granting a class wide preliminary injunction as to asylum seekers entitling them to in-person access to retained counsel. *Supra.* Holding, "given the text of § 555(b), class members are entitled to in-person access to retained counsel prior to their non-*refoulement* interviews." *Id.*

140.     Federal courts repeatedly have recognized the importance of this right. *See*, *e.g. Orantes Hernandez v. Thornburgh*, 919 F.2d 549, 554 (9th Cir. 1990) (finding that immigrants have a due process right to obtain counsel of their choice at their own expense); *Iavorski v. INS*,

COMPLAINT

232 F.3d 124, 128 (2d Cir. 2000) (describing the statutory right to be represented by counsel as "an integral part of the procedural due process to which the alien is entitled.").

141.     Defendants' failure to act in order to protect the statutory, regulatory, and constitutional rights of Plaintiffs violates 8 U.S.C. § 1362 and the APA, 5 U.S.C. § 555(b).

<u>COUNT III</u>

VIOLATION OF THE FIFTH AMENDMENT RIGHT TO
PROCEDURAL DUE PROCESS (ACCESS TO COUNSEL)
(Against All Defendants)

142.     All of the foregoing allegations are re-alleged and incorporated by reference.

143.     The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V.

144.     Noncitizens in removal proceedings are entitled to procedural due process including the right to be represented by counsel. See *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."); *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005) ("The right to counsel in immigration proceedings is rooted in the Due Process Clause.").

145.     Defendants are violating procedural due process by depriving noncitizens of their ability to retain counsel, communicate confidentially with their legal representatives, and have counsel able to competently represent them in immigration court.

146.     As a result of Defendants' violations, Plaintiffs are suffering and will continue to suffer a significant deprivation of their right to counsel.

<u>COUNT IV</u>

VIOLATION OF THE FIRST AMENDMENT
(Attorney Plaintiffs Against All Defendants)

22

COMPLAINT

147.    All of the foregoing allegations are re-alleged and incorporated by reference.

148.    The First Amendment to the U.S. Constitution protects legal services providers from government interference when they are "advocating lawful means of vindicating legal rights." *NAACP v. Button*, 371 U.S. 415, 437 (1963).

149.    Defendants' policies have impeded Attorney Plaintiffs' access to their clients, thereby restricting their ability to communicate with and advise their clients. Defendants have therefore violated the Attorney Plaintiff's First Amendment rights.

<u>COUNT V</u>

VIOLATION OF THE FIRST AMENDMENT
(Detained Plaintiffs Against All Defendants)

150.    All of the foregoing allegations are re-alleged and incorporated by reference.

151.    The First Amendment to the U.S. Constitution guarantees the freedom of speech to all persons – including detainees.

152.    The right to retain and consult with an attorney is protected by the First Amendment. "[R]estrictions on speech between attorneys and their clients directly undermine the ability of attorneys to offer sound legal advice" and can violate the First Amendment. *Martin v. Lauer*, 686 F.2d 24, 32 (D.C. Cir. 1982).

153.    Immigrant detainees held in ICE custody possess a First Amendment right to receive legal advice from their retained counsel.

154.    "[T]he scope of the First Amendment's right is determined by balancing the [Plaintiffs'] interests in communication with the government's interest in preventing communication." *Jacobs v. Schiffer*, 204 F.3d 259, 265 (D.C. Cir. 2000).

COMPLAINT

155.     Defendants' actions and inactions leave no means of communication between attorneys and their clients and such actions and inactions are not narrowly tailored to any compelling governmental interest. Defendants have no legitimate, let alone compelling, interest in depriving Detained Plaintiffs of the ability to communicate with their attorneys.

156.     Defendants' failure to provide Plaintiffs' Attorneys with the location of their detained clients violate Detainee Plaintiffs' First Amendment right to receive their counsel's legal advice.

157.     Defendants' policy of preventing attorneys from meeting with Detainee Plaintiffs or any methods of communication denies Detainee Plaintiffs' access to their counsel and violates Detainee Plaintiffs' First Amendment right to receive their counsel's legal advice.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs requests that this Court:

(a) Issue injunctive relief ordering Defendants, to provide the details of the detention, and access to Attorney Plaintiffs to its detainee clients;

(b) Issue injunctive relief ordering Defendants to guarantee secure and reliable communication between noncitizens in detention and their legal representatives;

(c) Issue declaratory relief declaring Defendants practices in failing to disclose the locations of detainees to their legal representatives violates the APA;

(d) Issue declaratory relief declaring Defendants practices altering the spelling and order of names of Detainee Plaintiffs in order to prevent disclosure of Detainee Plaintiffs' locations violates the APA;

(e) Order the scheduling of a bond hearing for Detainee Plaintiffs;

(f) Award Plaintiffs all costs incurred in maintaining this action, including reasonable

attorneys' fees under the Equal Access to Justice Act, as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified by law; and

(g) Grant Plaintiffs any other and further relief this Court deems just and proper.

DATED: April 19, 2020

Respectfully Submitted,

_/s/_____
Julie A. Goldberg, Esq.
Goldberg & Associates, P.C.
5586 Broadway, Third Floor
Bronx, New York 10463
Tel.: (718) 432-1022
Email: ecf@goldbergimmigration.com

*Attorneys for Plaintiffs*

COMPLAINT